HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CYPRESS INSURANCE COMPANY,
as subrogee of Microsoft Corporation,

Plaintiff,

v.

SK HYNIX AMERICA, INC.,

Defendant.

Case No. 2:17-cv-00467-RAJ

**ORDER GRANTING IN PART AND DENYING IN PART THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Cypress Insurance Company's Motion for Partial Summary Judgment (Dkt. # 154) and Defendant SK Hynix America, Inc.'s Motion for Summary Judgment (Dkt. # 162). For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** both motions.[1]

## II. BACKGROUND

This is a breach of contract case brought by Plaintiff Cypress Insurance Company ("Cypress") as a subrogee to Microsoft Corporation ("Microsoft"). Dkt. # 34. During the relevant time period, from July 1, 2013 to July 1, 2014, Cypress insured Microsoft under Policy No. 1005 (the "Microsoft Policy"). *Id.* at ¶ 2; Dkt. # 162 at 12. Defendant SK

---

[1] The Court has redacted portions of the order containing sensitive business information that would harm the parties competitively if disclosed. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).

ORDER – 1

Hynix America, Inc. ("Hynix") is an electronic memory chip supplier. Dkt. # 34 at ¶¶ 4, 11. On August 19, 2004, Hynix entered into a supplier contract with Microsoft. *Id.* at ¶ 9. The contract, titled "Microsoft Component Purchase Agreement" (the "CPA"), has been modified by subsequent amendments, including by Amendment No. 9, dated April 1, 2013 (the "Ninth Amendment"). Dkt. # 154 at 4; Dkt. # 162 at 9. The Ninth Amendment concerns, in part, Microsoft's purchase of 2133 Mhz 4Gb DDR3 Dynamic Random Access Memory chips (the "DRAM chips") for use in its Xbox One gaming console. Dkt. # 154 at 3; Dkt. # 162 at 10.

On September 4, 2013, a fire occurred at a manufacturing plant in Wuxi, China, where Hynix makes a portion of the DRAM chips. Dkt. # 154 at 3; Dkt. # 162 at 12-13. After the fire, Hynix allegedly failed to comply with the terms of the CPA in providing the DRAM chips to Microsoft. Dkt. # 154 at 3. Microsoft tendered a claim to Cypress for damages resulting from the Wuxi fire under the Microsoft Policy's contingent time element provision. Dkt. # 154 at 10; Dkt. # 162 at 12. After deciding that Microsoft's claim was covered, Cypress paid Microsoft for losses up to the policy limit of $150 million. Dkt. # 154 at 12.

Cypress filed its original Complaint against Hynix on March 23, 2017. Dkt. # 1. On March 5, 2018, the Court gave Cypress leave to file an Amended Complaint pursuant to a stipulated motion submitted by the parties. Dkt. # 33. Cypress filed the Amended Complaint on March 6, 2018. Dkt. # 34. Sometime in March 2018, Microsoft assigned all of its rights, claims, interests, causes of action, and damages against Hynix in this matter to Cypress. Dkt. # 39-1. On September 18, 2018, Cypress filed a Motion for Partial Summary Judgment and on November 13, 2018, Hynix filed a Cross-Motion for Summary Judgment, which were refiled per the Court's instruction on January 25, 2018. Dkt. ## 47, 80, 154, 162. The parties' cross-motions are now before the Court.

//

//

ORDER – 2

## III. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

Despite this mandate, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the non-moving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

ORDER – 3

## IV. DISCUSSION

In its motion for partial summary judgment, Cypress asks the Court to find Hynix breached several provisions of the CPA as a matter of law. Dkt. # 154 at 1-2. Additionally, Cypress requests the Court dismiss Hynix's voluntary payor affirmative defense. *Id.* at 2.

Hynix also moves for summary judgment and seeks full dismissal on the grounds that Cypress does not have a viable subrogation claim. Dkt. # 162 at 3-4. In the alternative, Hynix asks the Court to find as a matter of law that (i) the Ninth Amendment only required Hynix to use "commercially reasonable efforts" to supply 60 million DRAM chips under normal circumstances; (ii) the Ninth Amendment only required Hynix to provide Microsoft with "priority allocation" in the event of a capacity constraint; and (iii) Cypress' damages are limited to direct damages, *i.e.*, the incremental costs for replacement DRAM chips. *Id.* at 24.

The Court addresses the parties' contentions on subrogation before turning to arguments on breach of contract.

### A. <u>Subrogation</u>

In support of its motion, Hynix argues that Cypress had to perfect any conventional subrogation rights through an assignment under the Microsoft Policy. Dkt. # 162 at 9 n. 3. Because Cypress only received an assignment from Microsoft in March 2018, Hynix concludes that any claims stemming from the Wuxi fire would be time-barred. *Id.* In fact, Hynix states the Court's prior ruling denying Cypress leave to amend its Complaint confirms this. *Id.* Therefore, according to Hynix, Cypress may only proceed as an equitable subrogee. *Id.* Even then, Hynix finds that Cypress does not meet any of the essential elements for equitable subrogation. *Id.* at 9-10. Cypress opposes and contends that it can proceed either as a conventional or equitable subrogee to the extent of its insurance payment. Dkt. # 168 at 15. Cypress argues in particular that the Court's prior ruling did not affect its ability to assert a conventional subrogation claim against Hynix. *Id.* at 13.

ORDER – 4

"'Subrogation is the principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 191 P.3d 866, 874 (Wash. 2008) (en banc) (internal citations and quotations omitted). There are generally two types of subrogation, conventional and equitable. Conventional subrogation arises by contract while equitable subrogation arises by operation of law. *Id.* "An insurer entitled to subrogation 'stands in the shoes' of the insured and is entitled to the same rights and subject to the same defenses as the insured." *Id.* "The effect of an assignment under Washington law is substantially the same: 'An assignee steps into the shoes of the assignor, and has all the rights of the assignor.'" *Id.* at 874-75 (quoting *Estate of Jordan v. Hartford Accident & Indem. Co.*, 844 P.2d 403 (Wash. 1993)).

In this case, Hynix fails to show as a matter of law that Cypress cannot state a cognizable subrogation claim. With respect to conventional subrogation, the Microsoft Policy specifically delineates a section for subrogation; the same section also permits Microsoft to assign Cypress rights of recovery against others to the extent of a payment made under the policy: "The Insured is required to cooperate in any subrogation proceedings. The Company may require from the Insured an assignment or other transfer of all rights of recovery against any party for loss to the extent of the Company's payment." Dkt. # 160-32 at 58. Hynix fails to present sufficient evidence to compel finding Cypress has no conventional subrogation rights based on the Microsoft Policy's language. *See Mut. of Enumclaw Ins. Co.*, 191 P.3d at 875 (permitting insurers assigned rights to insured's other policies to pursue conventional subrogation claim based on loss paid); *Trinity Universal Ins. Co. v. Ohio Cas. Ins. Co.*, 312 P.3d 976, 984 (Wash. App. 2013) (explaining that by virtue of payments made to an insured, an insurer has a right of reimbursement that may arise either by contract or operation of law). Additionally, the Court's order stated that Cypress could not amend its Complaint to seek recovery as an *assignee* of Microsoft— not that Cypress could not recover as a conventional subrogee under the Microsoft Policy.

ORDER – 5

Dkt. # 53 at 6 (explaining that because Microsoft did not assign its rights to Cypress until after the statute of limitations, "claims based on *those* rights are time-barred") (emphasis added). Accordingly, based on the evidence before the Court, Hynix is not entitled judgment as a matter of law.

Hynix also fails to meet its burden regarding Cypress's ability to pursue its claims as an equitable subrogee. Washington's doctrine of equitable subrogation enables an insurer that has paid its insured's loss to recoup that payment from the party responsible for the loss. *Trinity Universal Ins. Co.*, 312 P.3d at 984; *British Columbia Ministry of Health v. Homewood*, 970 P.2d 381, 386 (Wash. App. 1999). Hynix claims Cypress cannot proceed as an equitable subrogee because Microsoft was not insured against the risk of Hynix breaching its contractual duties. Furthermore, Hynix believes an equitable subrogation claim is untenable because it was not responsible for the "physical loss or damage" to property for which Cypress paid Microsoft. Dkt. # 162 at 10-12 ("As a threshold matter, Hynix cannot be primarily liable for the debt that was paid here because that debt was an insurance payment based on a specifically insured risk: the risk of physical loss or damage to the property of the direct supplier such as Hynix. . . . Since the insurance payment was indisputably based on a policy provision covering against 'physical loss or damage' to property, Cypress was required to prove that Hynix, a third party to the Microsoft insurance policy, was responsible for that physical loss or damage.").

The Court is not able to conclude, as Hynix does, that Cypress' breach of contract claim is not covered loss under the Microsoft Policy's contingent time element provision. The provision states that Cypress will insure Microsoft for "the Actual Loss Sustained and EXTRA EXPENSE incurred . . . directly resulting from physical loss or damage of the type insured to property of the type insured at Contingent Time Element Locations . . . ." Dkt. # 160-32 at 43. Covered locations include the property of "a direct customer, supplier, contract manufacturer or contract service provider to the insured." *Id.* at 44. Because the scope of coverage is not easily ascertained from the language of the policy, the Court looks

ORDER – 6

to extrinsic evidence. *See, e.g., Denny's Restaurants, Inc. v. Security Union Title Ins. Co.*, 859 P.2d 619, 628 (Wash. App. 1993) (permitting use of extrinsic evidence where insurance policy was ambiguous with respect to the extent of coverage for off-record title defects). Hynix offers little evidence to support its interpretation that the time element provision did not cover potential breaches of contract, such as evidence indicating the policy only covered physical loss or damage to property. Dkt. # 162 at 10-12. Instead, Hynix relies on the deposition testimony of Cypress' insurance expert who states, at best, the Microsoft Policy was not liability coverage "for the fault of Hynix." *Id.* at 10; Dkt. # 165-23 at 5-6. Additionally, contrary evidence prevents the Court from granting Hynix summary judgment on whether equitable subrogation applies. Specifically, Cypress puts forth evidence showing the insurance adjusters determined the loss was covered under the Microsoft Policy and paid out based on that determination. Dkt. # 48-1 at 23-24, 30-31. Cypress also provides testimony from Hynix representatives who say Hynix would have been able to provide more DRAM chips to Microsoft but for the fire. *See* Dkt. # 155-1 at 88, 107-108. Given the liberal construction of equitable subrogation generally, and in viewing the evidence in Cypress's favor, the Court will not grant summary judgment. *See Bank of America, N.A. v. Prestance Corp.*, 160 P.2d 560, 576 (Wash. 2007) (applying liberal approach to equitable subrogation in mortgage lending context); 73 Am. Jur. 2d Subrogation § 5 (noting the liberal application of equitable subrogation and explaining it includes every instance in which one person, not acting voluntarily, paid a debt for which another was primarily liable and should have been discharged by the latter).

Related to its subrogation claim, Cypress seeks summary judgment on Hynix's voluntary payor defense. Under Washington law, "[o]ne is a volunteer and not entitled to subrogation if, in making payment, he has no right or interest of his own to protect and acts without obligation, moral and legal, and without being requested to do so by a person liable on the obligations." *Hartford Ins. Co. v. Ohio Cas. Ins. Co.*, 189 P.3d 195, 200 (Wash. App. 2008). While Hynix is not entitled to judgment as matter of law on the applicability

ORDER – 7

of equitable subrogation, the Court also finds that dismissing its voluntary payor defense is not warranted given the evidence. Although Cypress offers evidence that its representatives investigated the loss and paid out based on a determination that the loss was covered, Hynix presents testimony that Cypress is comprised of members of Microsoft's risk department and hastily investigated the loss before paying out on the claim. Dkt. # 160-2 at 3-4, 12-13; Dkt. # 160-19 at 9-10; Dkt. # 160-33; Dkt. # 165-1; Dkt. # 165-9. Hynix argues strategic considerations unrelated to the claimed loss were at play in Cypress' decision to make the insurance payment. Dkt. # 156 at 29-30. Based on the evidence, it is not unreasonable to believe a jury could find for Hynix on this point. *Soremekun*, 509 F.3d at 984 (9th Cir. 2007).

### B. Breach of Contract

Cypress asks the Court to find that Hynix breached certain provisions of the CPA as a matter of law. Hynix opposes and argues it did not breach its contractual obligations to Microsoft or, alternatively, those obligations were excused by commercial impracticability. Additionally, Hynix seeks partial summary judgment on certain interpretations of the CPA as modified by the Ninth Amendment. The parties do not dispute that CPA and Ninth Amendment are governed by Washington law.

#### i. The CPA and the Ninth Amendment

In determining the scope of Hynix's duties, the Court first looks to the Ninth Amendment. The parties do not reasonably dispute that the Ninth Amendment established the terms and conditions under which Hynix agreed to supply the DRAM chips to Microsoft. Dkt. # 155-1 at 4; *id.* at 35-36 ("The terms of this Exhibit A only apply to purchases of the Product identified in the Product Table . . . . The terms of this Agreement shall supersede any inconsistent terms contained in the [Component Purchase Agreement]."); Dkt. # 160-5.

The Ninth Amendment specifies the price and "capacity targets" for the DRAM chips Microsoft intended to order from Hynix during the relevant period. Dkt. # 155-1 at

ORDER – 8

38. Under the Pricing Table, Microsoft agreed to pay ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇ for the DRAM chips. *Id.* Under the Capacity Table, Hynix agreed to use "commercially reasonable efforts" in supplying ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* The Ninth Amendment further clarifies that the capacity targets are not a "minimum purchase commitment," but states Microsoft intended to order at least 50 percent of its total requirements from Hynix. *Id.* The Ninth Amendment also outlines the parties obligations regarding forecasts and purchase orders, which include: (i) requiring Microsoft to provide Hynix with an updated six-month rolling forecast of anticipated requirements about once each month; (ii) explaining that forecasts are just for planning purposes; (iii) giving Microsoft the ability to increase quantities included in its purchase orders upon written consent from Hynix, which shall not be unreasonably withheld; and (iv) prohibiting Hynix from rejecting any purchase order that comply with the Agreement, except as provided for in the CPA, including, without limitation, capacity constraints under Section 4.2. *Id.* at 39. Section 4.2 of the CPA states that "[i]n the event of any capacity constraints, Hynix will give Microsoft priority allocation." Dkt. # 155-1 at 25; Dkt. # 160-4 at 3.

### ii. Cypress' claims regarding Hynix's breaches of the CPA

#### (1) Whether Hynix breached Paragraph 1.1 by failing to supply DRAM chips to Microsoft

Paragraph 1.1 of the CPA states: "Supplier agrees to sell the products identified on Exhibit A (the "Products") to Microsoft and Subcontractors throughout the Term pursuant to the terms and conditions of this Agreement, and not to discontinue the manufacture of the Product … or otherwise discontinue or restrict the supply of the Product(s) to Microsoft and/or Subcontractors. Product prices are set forth on Exhibit A." Dkt. # 155-1 at 25; Dkt. # 160-4 at 3. Exhibit A is included in the Ninth Amendment. Dkt. # 160-4 at 5.

Cypress claims Hynix breached Paragraph 1.1 in two ways. First, Cypress argues that Hynix breached Paragraph 1.1 by failing to provide Microsoft with at least 60 million

ORDER – 9

DRAM chips. Second, Cypress claims Hynix breached by failing to meet Microsoft's total demand for DRAM chips in 2013, which approached 100 million. Dkt. # 154 at 6. In support, Cypress offers admissions from Hynix stating that it failed to provide Microsoft with at least 60 million DRAM chips and did not meet Microsoft's total demand for the DRAM chips in 2013. Dkt. # 155-1 at 68-70. In addition, Cypress offers deposition testimony of Hynix representatives which purportedly confirm that Hynix never rejected any purchase orders from Microsoft, even after the fire. *Id.* at 61, 87, 98-99. Hynix responds with evidence that it provided Microsoft approximately 51 million DRAM chips, or 99 percent of the DRAM chips it had available, and concludes it did not breach the CPA given the Ninth Amendment's "commercially reasonable efforts" language. Dkt. # 160-23. Additionally, Hynix offers communications with Microsoft where it purportedly told Microsoft that it could not meet the forecast for Q3'13 and would be short of the total capacity target. Dkt. # 160-11.

As to Cypress' first contention, the Court finds the relevant provisions of the CPA and Ninth Amendment to be unambiguous. *Allstate Ins. Co. v. Hammonds*, 865 P.2d 560, 562 (Wash. App. 1994) ("An ambiguity exists in a provision when, reading the contract as a whole, two reasonable and fair interpretations are possible."). Paragraph 1.1 requires Hynix sell the DRAM chips pursuant to the terms and conditions of the CPA and also requires Hynix not restrict the supply of DRAM chips. As memorialized in the Ninth Amendment, Hynix agreed to use "commercially reasonable efforts" in meeting the capacity targets for the DRAM chips—60 million for Q2'13 through Q4'13. Dkt. # 155-1 at 38.

Therefore, the Court finds Cypress' preferred interpretation, where Hynix breaches the CPA just by supplying less than 60 million DRAM chips, would render the Ninth Amendment's "commercial reasonable efforts" language superfluous. *Craig Wireless Systems Ltd. v. Clearwire Legacy LLC*, No. C10–1269Z, 2011 WL 4011415, at *7 (W.D. Wash. Sept. 9, 2011) (applying Washington law) (requiring courts to give effect to every

ORDER – 10

term in interpreting a contract); *Rimov v. Schultz*, 253 P.3d 462, 466 (Wash. App. 2011). Accordingly, to prevail on summary judgment based on Hynix's failure to provide 60 million chips, Cypress must show Hynix failed to use commercially reasonable efforts in doing so. Whether a party has used commercially reasonable efforts is typically a question of fact. *See, e.g.*, *Mount Vernon Dodge, Inc. v. Seattle–First Nat'l Bank*, 570 P.2d 702, 712 (1977). Here, Cypress points to evidence that Hynix could have set up a special task force to oversee the Microsoft project or allocated additional DRAM chips to Microsoft after the fire instead of supplying other customers. Dkt. # 155-1 at 77-78; Dkt. # 171-1 at 90. Hynix responds by pointing to evidence that it allocated 99 percent of the DRAM chips it had available to Microsoft. *See, e.g.*, Dkt. # 160-23 at 4. The disputed evidence on the issue of commercially reasonable efforts prevents summary judgment on this issue.

Regarding Cypress' second contention that Hynix breached Paragraph 1.1 by failing to provide Microsoft's total demand for DRAM chips, the Court also finds summary judgment inappropriate. In analyzing the applicable terms, the Court again looks to the Ninth Amendment. The Ninth Amendment amends Paragraph 4.1 of the CPA, which governs purchase orders placed by Microsoft. It states: "About once each month, Microsoft will provide Supplier with an updated six-(6) month rolling forecast of anticipated product requirements (the "Forecast"). Microsoft may increase quantities included in its Purchase Orders as indicated in the Purchase Order Flexibility below only upon receipt of Supplier's prior written consent which shall not be unreasonably withheld. . . . Except as otherwise provided in this Agreement, including without limitation capacity restraints under Section 4.2, Supplier may not reject any Purchase Order that complies with this Agreement." Dkt. # 155-1 at 39.

Cypress argues this provision permitted Microsoft to forecast and submit purchase orders for any amount and that Cypress could only reject in instances such as capacity constraints. Dkt. # 168 at 17-18. Hynix objects to this interpretation and offers its communications with Microsoft as evidence; the emails show Hynix bargained for written

ORDER – 11

approval for "upside requests." Dkt. # 160-22. Based on this evidence, Hynix seeks declaratory relief that its only obligation was to use "commercially reasonable efforts" to supply 60 million DRAM chips under normal circumstances. Dkt. # 156 at 19-20.

"A provision is not ambiguous merely because the parties suggest opposing meanings." *Paradise Orchards Gen. P'ship v. Fearing*, 94 P.3d 372, 377 (Wash. App. 2004). Here, Cypress' interpretation of Paragraph 4.1 would again render the "commercially reasonable efforts" language superfluous. Cypress also fails to provide the Court with sufficient evidence to resolve the tension between these two provisions. *See Brotherson v. Prof'l Basketball Club, L.L.C.*, 604 F. Supp. 2d 1276, 1286 (W.D. Wash. 2009) (where interpretation "depend[s] on the use of extrinsic evidence," or the extrinsic evidence admits more than one "reasonable inference," the court cannot interpret the contract as a purely legal matter). The same is true for Hynix. Paragraph 4.1 can reasonably be read as permitting Microsoft to forecast and order more than 60 million chips and could thus require Hynix to assume additional obligations. *See* Dkt. # 155-1 at 39.

Therefore, Cypress is not entitled to summary judgment on this issue. Hynix's motion for partial summary judgment on the issue of whether Ninth Amendment only required Hynix to use "commercially reasonable efforts" to supply 60 million DRAM chips under normal circumstances is also denied.

### (2) Whether Hynix breached Paragraph 4.2 of the CPA by failing to allocate enough DRAM chips to Microsoft and by failing to give Microsoft priority allocation

Cypress claims that Hynix breached Paragraph 4.2 of the CPA by failing to provide DRAM chips in accordance with Microsoft's then-current forecasts and by not giving Microsoft "priority allocation" once Hynix faced capacity constraints due to the Wuxi fire. Dkt. # 154 at 7.

The Court finds summary judgment inappropriate here given the ambiguity of the preceding Paragraph 4.1, as just discussed, as well as the factual dispute over the forecasts offered by Microsoft and purchase orders accepted by Hynix. *See* Dkt. # 155 at 61, 98;

ORDER – 12

Dkt. # 160-7 at 12; Dkt. # 160-11; Dkt. # 160-26. The Court also finds summary judgment inappropriate on the issue of "priority allocation." *See Allstate Ins. Co.*, 865 P.2d at 562; *Washington Pub. Util. Dists. Utils. Sys. v. PUD 1*, 771 P.2d 701, 710 (1989). "Priority allocation" is undefined in the CPA. Cypress insists "priority allocation" means Microsoft could obtain as many of the products to satisfy its demand in the event of a capacity constraint, *i.e.*, to receive its demand before other customers got theirs, while Hynix contends it means Microsoft would receive "preferential treatment" but not necessarily top priority. Dkt. # 154 at 18; Dkt. # 155-1 at 15; Dkt. # 160-6 at 6; Dkt. # 160-8 at 6. Again, while a term is not ambiguous merely because the parties suggest opposing meanings, here both parties' positions are reasonable even considering the plain, ordinary, and popular meaning of the word "priority." *See Zenwork, Inc. v. Avalara, Inc.*, No. 16-01325, 2017 WL 8727856, at *1 (W.D. Wash. Dec. 4, 2017) (explaining the meaning of undefined terms may ascertained by standard English dictionaries); Dkt. # 48-1 at 34-35 (dictionaries defining "priority" as "the right to take precedence in obtaining supplies, services, facilities, etc., especially during a shortage" and as "a preferential rating"). The additional extrinsic evidence presented by the parties also fails to resolve this ambiguity as a matter of law. Accordingly, the Court declines to grant summary judgment given the dispute regarding the parties' intent regarding "priority allocation." *Southern Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003); *San Diego Gas & Elec. Co. v. Canadian Hunter Marketing Ltd.*, 132 F.3d 1303, 1307 (9th Cir. 1997).

### (3) Whether Hynix breached Paragraphs 4.2 and 7 of the CPA by failing to establish and maintain sufficient "Buffer Inventory"

Paragraph 7 of the CPA requires Hynix to establish sufficient buffer inventory: "In addition to filling Purchase Orders, Suppler will, at its own expense, establish and maintain through out [sic] the Term, an inventory of Products that have passed the required Supplier inspection (such inventory, the "Buffer Inventory"). The required quantity of Products in the Buffer Inventory will vary from month-to-month. . . . Microsoft and/or Subcontractors

ORDER – 13

may, at any time, submit additional Purchase Orders for an aggregate quantity of Products up to the quantity of Products then required to be in the Buffer Inventory. Supplier will establish an initial Buffer Inventory of at least one hundred thousand (100,000) units of Product at least two (2) weeks prior to the first anticipated delivery date indicated on Microsoft's initial Forecast." Dkt. # 155-1 at 26. Additionally, Paragraph 4.2 requires Hynix to "allocate manufacturing capacity, components, raw materials and parts, for manufacture of the Products in sufficient quantity … to maintain the Buffer Inventory described in Section 7." *Id.* at 25.

Cypress maintains that Hynix breached Paragraphs 4.2 and 7 of the CPA by failing to establish and maintain sufficient buffer inventory at the time of the fire. Dkt. # 154 at 19. In response, Hynix argues that Microsoft waived the buffer inventory provisions through its course of conduct and further contends the buffer inventory obligations did not apply in times of capacity constraint. Dkt. # 156 at 24. The Court disagrees with Hynix.

On the issue of waiver, the CPA states that no waiver will be effective unless in writing and signed by the waiving party. Dkt. # 155-1 at 29; Dkt. # 160-4 at 7. Hynix presents no evidence of a signed waiver to the Court, nor does it affirmatively show that any buffer inventory was affirmatively established. Instead, the record demonstrates that Microsoft and Hynix had conversations regarding the required buffer, which generally meant two weeks of inventory. Dkt. # 155-1 at 20, 56. This is also memorialized in the Ninth Amendment. Dkt. # 155-1 at 37. A Hynix representative testified, however, that it did not actually have facilities to store additional semiconductor inventory and sent produced inventory to customers right away. *Id.* at 90.

Furthermore, nothing in the CPA contemplates the buffer inventory provision becoming ineffective in the event of a capacity constraint. In fact, Paragraph 7 required Hynix to establish buffer inventory prior to the first anticipated delivery. *Id.* at 26. Hynix presents no material evidence in support of its interpretation that a "capacity constraint" relieved Hynix of establishing the buffer inventory in the first instance. By contrast,

ORDER – 14

Paragraph 7 states only that, "[i]f Buffer Inventory becomes depleted, Supplier will reestablish the required Buffer Inventory as promptly as possible according to the Lead Time." *Id.*

Accordingly, the Court finds that Cypress is entitled to summary judgment on breach of Paragraphs 4.2 and 7 based on Hynix's failure to establish and maintain sufficient buffer inventory.

### (4) Whether Hynix breached the CPA by failing to establish a Discovery Recovery Plan

Paragraph 12.1 concerns the creation of a written disaster recovery plan. It states: "Throughout the Term, Supplier will maintain a written disaster recovery plan (the "Disaster Recovery Plan") in order to ensure the supply of Products to Microsoft and Subcontractors in the event of a force majeure or other similar disruption. Supplier will submit a written Disaster Recovery Plan proposal to Microsoft for Microsoft's review and written approval within one hundred twenty (120) days after the Effective Date. Any material changes to the Microsoft approved Disaster Recovery Plan will be subject to Microsoft's prior review and written approval (not to be reasonably withheld). Supplier will promptly implement the Microsoft approved Disaster Recovery Plan upon any force majeure or similar circumstances." Dkt. # 155-1 at 27; Dkt. # 160-4 at 5.

As with the buffer inventory, Cypress claims Hynix breached the CPA by failing to maintain a written "Disaster Recovery Plan" in the event of a *force majeure*. In support, Cypress offers testimony from a Hynix representative who affirmatively stated that Hynix did not have a disaster recovery plan for Microsoft prior to the fire. Dkt. # 155-1 at 94-95. Hynix opposes, claiming Microsoft waived its right to enforce the Disaster Recovery Plan provision and, in any case, no breach occurred because Microsoft and Hynix collaborated on a recovery plan following the fire. Dkt. # 156 at 20.

As before, the Court finds that Hynix's waiver argument to be unsupported since no evidence of a written waiver is before the Court. Additionally, evidence of Hynix collaborating with Microsoft after the fire may be relevant to causation and damages, but

ORDER – 15

the Court finds it has no bearing on breach. Dkt. # 160-25; Dkt. # 160-26. Cypress is entitled to summary judgment on this issue.

### (5) Whether Hynix breached the CPA by failing to adhere to the pricing and capacity obligations in the Ninth Amendment

In the last of its claims, Cypress argues that Hynix breached the Ninth Amendment by supplying Cypress with more than 5 million DRAM chips above the price of ▓, as specified in the Pricing Table, and by failing to supply the 60 million chips listed in the Capacity Table. Dkt. # 154 at 20-21.

As previously addressed by the Court, Cypress' position that Hynix breached the CPA by simply failing to supply 60 million DRAM chips would render the Ninth Amendment's "commercial reasonable efforts" language superfluous. The Ninth Amendment also makes clear that "[t]he pricing in the Pricing Table . . . below will apply unless the parties agree to other pricing, in writing, in which case the price will be as reflected in the applicable Purchase Order." Dkt. # 155-1 at 38. Here, Hynix presents the Court with evidence that Microsoft agreed to pay a higher price for additional DRAM chips after the fire and issued purchase orders reflecting the new negotiated price. Dkt. # 160-27; Dkt. # 160-28; Dkt. # 160-29; Dkt. # 160-30. Accordingly, on the evidence presented, Cypress is not entitled to judgment as a matter of law on these two issues of breach.

### iii. Affirmative Defenses

Even if it breached the CPA, Hynix argues summary judgment is appropriate because any non-performance was rendered commercially impractical after the Wuxi fire. Dkt. # 162 at 21-22.

Section 62A.2-615 of the Washington Revised Code is meant to be asserted as a defense by a seller who is unable to deliver due to unforeseen circumstances and therefore has been sued by the buyer for breach of contract. *See Am. Oil Co. v. Columbia Oil Co., Inc.*, 567 P.2d 637, 640 (1977). However, as Cypress evidences, the existence of a provision calling for a "Disaster Recovery Plan" for use in the event of *force majeure* and

ORDER – 16

the fact that Hynix allocated additional DRAM chips to other customers precludes finding as a matter of law that Hynix's non-performance is entirely excusable based on commercial impracticability. Dkt. # 155-1 at 27, 78.

**iv. Damages**

The Ninth Amendment modifies the CPA and clarifies the liabilities of each party in the event of breach. In all capital letters, the clause reads: "To the maximum extent permitted by law, neither party will ever be liable for any indirect, incidental, consequential, punitive, special or exemplary damages that arise out of or relate to this Agreement." Dkt. # 155-1 at 35. Hynix seeks partial summary judgment on the applicability of the limitation of liability provision and argues it limits Microsoft, and thus Cypress, to direct damages only. Dkt. # 162 at 23-25.

Under Washington law, parties may limit their liability for breach of contract and the interpretation of such clauses is a matter of law. *See, e.g., Am. Nursery Prods., Inc. v. Indian Wells Orchards*, 797 P.2d 477, 481 (Wash. 1990). The applicability of a contractual limitation of liability is suitable for resolution on summary judgment. *M.A. Mortenson Co., Inc. v. Timberline Software Corp.*, 998 P.2d 305, 314 (Wash. 2000).

Under Section 62A.2-713 of the Washington Revised Code, when a seller fails to make delivery, the measure of damages for non-delivery is the difference between the market price of the time of breach and the contract price together with any incidental or consequential damages. RCWA § 62A.2-713. The Washington Revised Code includes in its definition of "incidental damages" any commercially reasonable charges, expenses or commissions in connection with effecting cover. RCWA § 62A.2-715; *see also* 67A Am. Jur. 2d Sales § 1160. As for consequential damages, the statute defines it to include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." RCWA § 62A.2-715. Here, the limitation of liability provision is unambiguous and disclaims liability for any incidental, consequential, punitive, special or

ORDER – 17

exemplary damages that arise out of or relate to this Agreement. *Id.* Because Cypress' claims for breach of contract plainly arise out of or relate to the CPA, it is subject to limitation of liability provision.

Cypress makes two arguments in response—that it is still entitled to freight charges and miscellaneous costs as "direct damages" and that the Court should find limitation of liability clause unconscionable. Cypress suggests freight charges and miscellaneous costs are "direct damages" because they "flow naturally from the breach of a contract." Dkt. # 168 at 22 (citing *Valve Corp. v Sierra Ent. Inc.*, 431 F.Supp. 2d 1091 (W.D. Wash. 2004)). However, the Court finds Cypress' cited case for this proposition distinguishable. *Valve Corp.* involved breach of a licensing agreement, not breach of a contract for the sale of goods. *Id.* at 1101. Cypress also fails to provide evidence that the parties intended "direct damages" to include freight charges and miscellaneous costs as opposed to the measure of damages under Section 62A.2-713.

Cypress' argument on unconscionability is similarly unpersuasive. In a purely commercial transaction, as is the case here, the fact that an unfortunate result occurs after the contracting process does not render an otherwise standard limitation of remedies clause substantively unconscionable. *See M.A. Mortenson Co., Inc.*, 998 P.2d at 315. Nor was the limitation of liability clause procedurally unconscionable. *Id.* (describing procedural unconscionability as the "lack of meaningful choice," considering the circumstances surrounding the transaction, and whether the important items were hidden) (internal citations omitted). The limitation of liability clause was set forth in capital letters in the Ninth Amendment and negotiated between the parties. Dkt. # 155-1 at 35; Dkt. # 160-22. Microsoft is not an inexperienced seller and had entered into purchase agreements for almost ten years prior to the dispute. Cypress stands in the shoes of the Microsoft here and is subject to the limitation of liability clause. Hynix is entitled to summary judgment on this issue. Accordingly, Cypress may not recover any indirect, incidental, consequential, punitive, special or exemplary damages.

ORDER – 18

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** Cypress' Motion for Partial Summary Judgment (Dkt. # 154) on the issues relating to breach of the CPA's buffer and disaster plan provisions and otherwise **DENIES** Cypress' Motion. The Court also **GRANTS IN PART** Hynix's Motion for Summary Judgment (Dkt. # 162) on the applicability of the CPA's limitation of liability provision (as modified by the Ninth Amendment) and otherwise **DENIES** Hynix's Motion.

DATED this 6th day of February, 2019.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 19