Hon. Richard A. Jones

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| CYPRESS INSURANCE COMPANY, as subrogee of Microsoft Corporation, | Civil Action No. 2:17-CV-00467-RAJ |
| Plaintiff, | **DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL BRIEF** |
| vs. | Trial:        March 5, 2019 |
| SK HYNIX AMERICA, INC., | |
| Defendant. | |

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL BRIEF
(2:17-CV-00467-RAJ)

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

## TABLE OF CONTENTS

Page

I.  FACTUAL BACKGROUND ........................................................................1

II. SUMMARY OF CYPRESS'S CLAIMS .....................................................2

    A.  Cypress Is Not An Assignee And Can Only Recover As A Subrogee. ....................2

    B.  Cypress Carries The Burden Of Proof On Its Claims. .............................................3

    C.  Hynix Intends To Disprove Various Elements Of Cypress's Claims. .....................4

        1.  Microsoft's loss was not covered under the policy, and thus Cypress cannot pursue this action as a subrogee. ........................................................4

        2.  Hynix was not primarily responsible for Microsoft's loss. ...........................5

        3.  Hynix did not breach its contractual duties. ..................................................6

III. SUMMARY OF HYNIX'S AFFIRMATIVE DEFENSES .................................8

    A.  The Commercial Impracticability Defense. .............................................................8

        1.  The elements of the commercial impracticability defense. ...........................8

        2.  The evidence supporting commercial impracticability. .................................9

    B.  The Voluntary Payment Defense. ...........................................................................9

        1.  The elements of the voluntary payment defense. ..........................................9

        2.  The evidence supporting voluntary payment defense. .................................10

IV. DAMAGES ...............................................................................................10

    A.  Cypress May Not Pursue Incidental And Consequential Damages. ......................10

    B.  Cypress's "Cover" Damages Are Limited To Chips Actually Due From Hynix In 2013 But Were Not Delivered. ................................................................11

    C.  As Microsoft's Subrogee, Cypress May Only Recover Damages That Are Covered By The Microsoft Policy And Paid By Cypress. ......................................13

V.  EVIDENTIARY ISSUES ..........................................................................14

    A.  Evidence Relating To The Buffer Inventory Provision And Disaster Recovery Plan Provision. ......................................................................................14

    B.  Evidence Of Undisclosed Intent, Subjective Interpretations Of Contract Terms, Or Non-Percipient Witness Interpretation Of The Contracts At Issue Should Be Excluded. ......................................................................................15

    C.  Evidence of Microsoft's Failure to Take Reasonable Precautions Is An

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL BRIEF
(2:17-CV-00467-RAJ)
Page i

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

1                   Admission and Highly Relevant to Hynix's Defenses.............................................18

2          D.      Damages After January 1, 2014 Are Inadmissible....................................................18

3          E.      Evidence Of Damages Must Be Directly Tied To The Fire....................................20

4    VI.    ISSUES OF LAW AND VERDICT FORMS.........................................................................21

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL
BRIEF
(2:17-CV-00467-RAJ)
Page ii

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Int'l Longshoremen's Union Local No. 10*,
    966 F.2d 443 (9th Cir. 1992) ................................................................................17

*BP W. Coast Prods. LLC v. SKR Inc.*,
    989 F. Supp. 2d 1109 (W.D. Wash. 2013) .......................................................3, 4, 14

*Brotherson v. Prof'l Basketball Club, LLC*,
    604 F. Supp. 2d 1276 (W.D. Wash. 2009) ............................................................21

*Columbia Park Golf Course, Inc. v. City of Kenneick*,
    160 Wash. App. 66 (2011) .....................................................................................4

*Duff v. McGraw-Hill Cos.*,
    No. C02-1347RSL, 2006 WL 2165913 (W.D. Wash. July 28, 2006) .......................4

*Fireman's Fund Ins. Co. v. Morse Signal Devices*,
    151 Cal. App. 3d 681 (1987) ...................................................................................5

*Gaglidari v. Denny's Rests., Inc.*,
    117 Wash. 2d 425 (1991) .....................................................................................18

*Hadley v. Baxendale*, 9 Ex. 341, 354, 156 Eng. Rep. 145, 151 (1854) ..........................18

*Hartford Ins. Co. v. Ohio Cas. Ins. Co.*,
    145 Wash. App. 765 (2008) ...................................................................................9

*Hernandez v. City of Vancouver*,
    No. C04-5539 FDB, 2009 WL 279038 (W.D. Wash. Feb. 5, 2009) ........................17

*Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*,
    123 Wash. 2d 678 (1994) (en banc) ......................................................................16

*Mahler v. Szucs*,
    135 Wash. 2d 398 (1998) .......................................................................................5

*Meas v. State Farm Fire & Cas. Co.*,
    130 Wash. App. 527 (2005) ...................................................................................20

*Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*,
    164 Wash. 2d 411 (2008) (en banc) ........................................................................3

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL BRIEF
(2:17-CV-00467-RAJ)
Page iii

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
　　523 F.3d 1051 (9th Cir. 2008) ..................................................................17

*Patent Scaffolding Co. v. William Simpson Constr. Co.*,
　　256 Cal. App. 2d 506 (1967) .....................................................................5

*RSD AAP, LLC v. Alyeska Ocean, Inc.*,
　　190 Wash. App. 305 (2015) ......................................................................16

*SAS Am., Inc. v. Inada*,
　　71 Wash. App. 261 (1993) ........................................................................21

*Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr. Inc.*,
　　119 Wash. 2d 334 (1992) ..........................................................................20

*Traumann v. Southland Corp.*,
　　858 F. Supp. 979 (N.D. Cal. 1994) ..........................................................17

*Trinity Universal Ins. Co. of Kansas v. Ohio Cas. Ins. Co.*,
　　176 Wash. App. 185 (2013) ..................................................................3, 13

**Statutes**

Revised Code of Washington (RCWA )
　　§62A.2-615 ................................................................................................8

　　§62A.2-712 ..................................................................................11, 12, 13

　　§62A.2-713(1) ..........................................................................................11

　　§62A.2-715 ..............................................................................................11

**Other Authorities**

Couch on Insurance § 222:5, 3rd., Russ, Lee; Segalla, Thomas F. ................3, 5

Federal Rule of Evidence 602 ....................................................................15, 16

Federal Rule of Evidence 702 ..........................................................................17

Federal Rules of Evidence 901 ........................................................................15

Rest. (2d) Contracts, § 351(1) ........................................................................18

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL
BRIEF
(2:17-CV-00467-RAJ)
Page iv

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

1    Pursuant to the Court's January 18, 2019 Order (Dkt. No. 152), Defendant SK Hynix

2  America Inc. ("Hynix") submits the following trial brief in advance of the jury trial set to

3  commence on March 5, 2019.

4  **I.      FACTUAL BACKGROUND**

5    The factual background in this matter has been briefed extensively by both parties in their

6  motions for summary judgement and in the Court's order denying in part and granting in part the

7  parties' cross-motions for summary judgment.  (Dkt. Nos. 154, 162, 195.)

8    In brief, this is a breach of contract case brought by Plaintiff Cypress Insurance Company

9  ("Cypress") as a subrogee to Microsoft Corporation ("Microsoft").  During the relevant time

10  period, from July 1, 2013 to July 1, 2014, Cypress—Microsoft's captive insurance company—

11  insured Microsoft under Policy No. 1005 (the "Microsoft Policy").  (Trial Ex. 107 (Microsoft

12  Policy.)  In 2004, Microsoft and Hynix signed a general component purchase agreement ("CPA")

13  governing the supply of various semiconductor memory chips.  (Trial Ex. 1 (CPA).)  Effective

14  April 1, 2013, Microsoft and Hynix executed the Ninth Amendment to the CPA ("Ninth

15  Amendment") for the delivery of 2133 4Gb DDR3 Dynamic Random Access Memory chips

16  ("2133 DRAM chips").  (Trial Ex. 2 (Ninth Amendment).)  Under the Ninth Amendment, Hynix

17  agreed to use commercially reasonable efforts to provide up to 60 million 2133 DRAM chips for

18  the second, third, and fourth quarters of 2013.  (*Id.* at 4.)  More specifically, under the Ninth

19  Amendment's Capacity Table, the target quantities were 2 million DRAM chips in the second

20  quarter of 2013, 33 million chips in the third quarter, and 25 million chips in the fourth quarter,

21  with any unordered quantities not carrying over to the next quarter.  (*Id.*)  As indicated in the

22  Ninth Amendment, Hynix negotiated for, and Microsoft agreed to, a limitation on Hynix's supply

23  obligation to only "commercially reasonable efforts" to achieve the capacity target.  (*Id.*)

24    Notwithstanding the express terms of the Ninth Amendment, Microsoft sent Hynix an

25  initial forecast of over 82 million chips on June 5, 2013, followed by purchase orders a few weeks

26  later for over 85 million 2133 DRAM chips, knowing that Hynix would not be able to support that

27  volume.  (Trial Exs. 1004, 12.)  There is no evidence that Hynix communicated acceptance of

28  these purchase orders or otherwise commenced work on these orders.

---

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL
BRIEF
(2:17-CV-00467-RAJ)
Page 1

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

On September 4, 2013, a fire occurred at a Hynix-affiliated DRAM fabrication facility in Wuxi, China.  That fire reduced worldwide DRAM supply by 15 percent and cut Hynix's own supply capability by nearly half.  Notwithstanding this effect on Hynix's supply capacity, Microsoft placed *new* purchase order requests to Hynix for delivery of 2133 DRAM chips in 2013. (Trial Ex. 1161.)

Immediately following the Wuxi fire, Hynix put into place a recovery and support plan for Microsoft, telling Microsoft that it would aim to still support 50.6 million 2133 DRAM chips in 2013, with a total of 27.7 million chips in the fourth quarter of 2013.  By the end of 2013, Hynix had produced approximately 50.8 million 2133 DRAM chips, of which 99 percent (50.6 million) of available chips were supplied to Microsoft.  Moreover, Hynix also provided 14.6 million additional chips in January and February 2014, thereby exceeding the 60 million capacity target set forth in the Ninth Amendment.  (Trial Ex. 1084.)

After the Wuxi fire, Microsoft tendered a claim to its insurers in October 2013 under the contingent time element provision of the Microsoft Policy, which insured Microsoft against losses "directly resulting from physical loss or damage . . . to property" of a direct supplier.  (Trial Ex. 107 (Microsoft Policy) at 42-43.)  As part of its insurance claim, Microsoft claimed three broad categories of losses resulting from the Wuxi fire, including incremental costs for replacement DRAM chips, incremental airfreight costs, and other incidental costs such as storage of Xbox One accessories and idle labor costs.  (Trial Ex. 147.)  Microsoft claimed that, because of the fire, it needed to charter cargo planes to ship its completed Xbox One consoles instead of using ocean freight as originally planned.  It also claimed it likewise had to spend extra money to store Xbox One accessories and to pay staff at its manufacturing facility.  Those incremental freight and other indirect costs comprised approximately half of Microsoft's claimed losses.  (*Id.*) The reinsurers eventually paid out on Microsoft's claim up to the policy sublimit of $150,000,000.  Microsoft's deductible under the policy was $25,000,000, which Cypress is also seeking to recover here.

## II.       SUMMARY OF CYPRESS'S CLAIMS

### A.       Cypress Is Not An Assignee And Can Only Recover As A Subrogee.

Cypress has brought a single claim for breach of contract as a subrogee of Microsoft.  The

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL BRIEF
(2:17-CV-00467-RAJ)
Page 2

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

1    Court denied Cypress's motion for leave to amend its complaint to bring its claims as an assignee

2    of Microsoft.  (Dkt. No. 53.)  The Court has found that Cypress can pursue its claims at trial as

3    either a conventional (*i.e.*, contractual) subrogee or as an equitable subrogee.  (Dkt. No. 195 at 5-

4    6.)

5           As a subrogee, Cypress "steps into the shoes" of Microsoft, but may *only* recover those

6    losses paid out to Microsoft that correspond to Microsoft's losses insured under the Microsoft

7    Policy.  *See* COUCH ON INSURANCE § 222:5 ("Accordingly, on paying a loss, an insurer is

8    subrogated in a corresponding amount to the insured's right of action against any other person

9    responsible for the loss, such that the insurer is entitled to bring an action against this third party

10   whose negligent or other tortious or wrongful conduct caused the loss, regardless of whether the

11   insurer would have been entitled to bring such an action in its own right." (internal citations

12   omitted)).  Cypress is not an assignee and therefore *may* recover only those damages that were not

13   paid out by Cypress pursuant to the Microsoft Policy, not all damages suffered by Microsoft.  *See,*

14   *e.g.*, *Trinity Universal Ins. Co. of Kansas v. Ohio Cas. Ins. Co.*, 176 Wash. App. 185, 204 (2013)

15   (finding insurance company could not pursue statutory claims as an equitable subrogee because

16   those claims were not assigned and not paid out as a loss: "Equitable subrogation entitles a paying

17   primary insurer to seek reimbursement for losses paid. It does not allow the insurer to assert an

18   insured's statutory rights without express agreement. Nor does it authorize the insurer to retain the

19   proceeds of those claims.").

20          **B.       Cypress Carries The Burden Of Proof On Its Claims.**

21          As a threshold matter, Cypress must first establish that it can pursue this breach of contract

22   action as a subrogee of Microsoft.  To do so, Cypress must first establish that the loss suffered by

23   Microsoft was properly and actually covered by Cypress's insurance contract with Microsoft and

24   that the loss was paid by the subrogating insurer (Cypress).  *See Mut. of Enumclaw Ins. Co. v. USF*

25   *Ins. Co.*, 164 Wash. 2d 411, 423 (2008) (en banc).

26          To prevail on a breach of contract claim under Washington law, Cypress must then

27   establish four essential elements: (1) a duty owed by Hynix to Microsoft; (2) a breach of that duty;

28   (3) proximate causation; and (4) damages.  *BP W. Coast Prods. LLC v. SKR Inc.*, 989 F. Supp. 2d

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL
BRIEF
(2:17-CV-00467-RAJ)
Page 3

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

1109, 1121 (W.D. Wash. 2013). "For any breach to arise, there must first be some duty to perform." *Id.*

Cypress bears the burden of proof on its claims. *Columbia Park Golf Course, Inc. v. City of Kennewick*, 160 Wash. App. 66, 83 (2011) ("To recover, the plaintiff has the burden of proving that the defendant breached the contract, that the plaintiff incurred actual economic damages as a result of the breach, and the amount of the damages.").

Critically, the Ninth Amendment contains a provision stating that Hynix "agrees that it will use *commercially reasonable efforts* to meet the capacity requirements identified in the Capacity Table" for each applicable quarter in 2013. (Trial Ex. 2 (Ninth Amendment) § 2 (emphasis added).) In other words, Hynix's duty under the contract was to use commercially reasonable efforts to meet the supply requirements set forth in the Ninth Amendment. Accordingly, in order to establish that Hynix breached that duty by not providing 60 million 2133 DRAM chips in 2013 pursuant to the Capacity Table in the Ninth Amendment, Cypress bears the burden of establishing that Hynix *did not use* commercially reasonable efforts to meet Microsoft's demand. (Dkt. No. 195 at 11 ("Cypress must show Hynix failed to use commercially reasonable efforts" in failing to provide 60 million chips).) Unless Cypress can establish—by a preponderance of the evidence—a breach of that duty, it cannot prevail on its breach of contract claim. *See, e.g.*, *Duff v. McGraw-Hill Cos.*, No. C02-1347RSL, 2006 WL 2165913, at *4-5 (W.D. Wash. July 28, 2006) (granting summary judgment for defendant where plaintiff failed to offer evidence of breach of commercially reasonable efforts provision).

### C.   Hynix Intends To Disprove Various Elements Of Cypress's Claims.

Hynix expects to present various defenses to Cypress's claims at trial. These defenses and factual evidence supporting them are described in Hynix's motion for summary judgment and further described below.

#### 1.   Microsoft's loss was not covered under the policy, and thus Cypress cannot pursue this action as a subrogee.

Microsoft's loss was not covered under the insurance policy between Cypress and Microsoft because Microsoft was not insured against a *breach of contract* by Hynix. In other

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL
BRIEF
(2:17-CV-00467-RAJ)
Page 4

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

1   words, Hynix cannot be primarily liable for the debt that was paid by Cypress to Microsoft

2   because that debt was an insurance payment based on a specifically insured risk: the risk of

3   physical loss or damage to the property of a direct supplier such as Hynix.  But Microsoft was *not*

4   insured against the risk of Hynix breaching its contractual duties.  Hynix will present evidence at

5   trial demonstrating that the terms of the insurance policy do not insure against a breach of

6   contract, and that Cypress cannot try to shift its responsibilities under its insurance contract to

7   Hynix for a loss that Cypress specifically insured against—loss from *property damage*.

8            **2.      Hynix was not primarily responsible for Microsoft's loss.**

9            Since the insurance payment was indisputably based on a policy provision covering against

10  "physical loss or damage" to property, Cypress is required to prove that Hynix—a third party to

11  the Microsoft insurance policy—was responsible for that physical loss or damage.  *See* Couch on

12  Insurance § 222:5 (subrogee can pursue "action against any other person *responsible for the loss*,

13  such that the insurer is entitled to bring an action against this third party whose negligent or other

14  tortious or wrongful conduct *caused the loss*" (emphasis added)).  Hynix will present evidence at

15  trial establishing that it was *not* responsible for the physical loss experienced by Microsoft—that

16  is, the loss of 2133 DRAM chips—since there is no evidence that Hynix caused the Wuxi fire.

17  Since a breach of a contractual duty cannot be what *caused* the property damage that led to

18  Microsoft's loss, Cypress cannot sue Hynix as a subrogee based on those same contractual duties.

19  *See Mahler v. Szucs*, 135 Wash. 2d 398, 413 (1998) ("In a typical case of a fire loss, upon

20  payment of the loss to the insured, the property insurer would be subrogated to the extent of its

21  payment to the remedies of the insured against the party *that caused the loss*.") (emphasis added);

22  *Fireman's Fund Ins. Co. v. Morse Signal Devices*, 151 Cal. App. 3d 681, 688 (1987) ("[W]hile the

23  Alarm Companies may have been negligent in performance of their contractual duties, their

24  negligence did not create the harm. . . . [T]he primary cause of the loss is the creator of the fire or

25  the burglar. The Alarm Companies' alleged negligence would be secondary to creation of the

26  perils."); *Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal. App. 2d 506, 512

27  (1967) ("The insurers' loss was not caused by [the third party's] failure to get insurance or to

28  indemnify [the insured]. The insurers' loss was caused by the fire, the very risk which each

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL
BRIEF
(2:17-CV-00467-RAJ)
Page 5

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

assumed, and [the third party's] failure to perform its contractual duty had nothing to do with the fire.").

### 3.    Hynix did not breach its contractual duties.

Even if the loss was covered and Cypress can pursue Hynix for Microsoft's loss (as Microsoft's subrogee), Hynix will also show that it did not breach its contractual duties to Microsoft.  Hynix will present evidence at trial showing it fully performed under the CPA and Ninth Amendment in at least the following ways:

- ***Hynix never agreed to supply more than 60 million 2133 DRAM chips in 2013***. Hynix will present evidence showing that it never agreed, and in fact indisputably rejected, any purchase orders exceeding the 60 million contractual target under the Ninth Amendment.

- ***Hynix's only obligation was to use commercially reasonable efforts, which it did***. Hynix will present evidence at trial showing that it satisfied its obligations under the Ninth Amendment to use "commercially reasonable efforts" to meet Microsoft's demand.[1]  For instance, the evidence will show that Hynix supplied Microsoft with 99 percent of Hynix's available 2133 DRAM chips, and that Hynix was still able to provide nearly 51 million 2133 DRAM chips to Microsoft in 2013 notwithstanding the Wuxi fire.  Hynix will also present expert testimony showing that Hynix's actions were consistent with industry custom and practice given the manufacturing constraints Hynix faced prior to and as a result of the fire.

- ***Hynix was in a capacity constraint and met its obligations to Microsoft***.  Hynix will present evidence at trial establishing that it was in a capacity constraint prior to the Wuxi fire, which was exacerbated as a result of the devastation of the fire. Hynix will present evidence showing that it provided 99 percent of its available

---

[1]    To be clear, Cypress bears the burden of establishing that Hynix did not use commercially reasonable efforts, as that is an express contractual term negotiated between the parties.  While Hynix maintains that Cypress cannot meet that burden, Hynix will also offer evidence establishing that it fully complied with its contractual obligation to use commercially reasonable efforts to supply Microsoft with 60 million 2133 DRAM chips in 2013 pursuant to the Ninth Amendment's Capacity Table.

2133 DRAM chips to Microsoft, meeting its obligations under the Ninth Amendment.  Hynix will also present evidence showing that it supplied 5 million additional chips to Microsoft that Hynix was able to reallocate from other customers.

- ***Microsoft agreed to any price changes***.  Cypress contends that Hynix breached the Ninth Amendment by charging $3.50 per part for a tranche of 5 million 2133 DRAM chips in October 2013.  At trial, Hynix will present documents and testimony showing that (i) the Ninth Amendment allowed the parties to agree in writing to separate pricing, (ii) Microsoft agreed to the price change, and (iii) the price was reasonable because Hynix needed to ensure the chips sourced from other customers met Microsoft's performance and quality requirements.

- ***Any breach of the buffer inventory and disaster recovery plan provisions did not proximately cause Microsoft's damages***.  Cypress contends that Hynix breached the buffer inventory and disaster recovery plan provisions of the CPA.  The Court granted Cypress's motion for partial summary judgment on these breaches, but found that proximate causation and damages had not been established.  (Dkt. No. 195 at 14-15; Dkt. No. 199 at 7 ("The factual issues that remain on outstanding claims will go before the jury for adjudication.").)  At trial, Hynix will present evidence establishing that any breach of these provisions could not have caused any of Microsoft's damages because, among other things, (i) Microsoft's demand required that any new 2133 DRAM chips be delivered immediately to Microsoft rather than stored as inventory; (ii) Hynix was in a capacity constraint, which impacted how Hynix could handle buffer inventory under the Ninth Amendment as well as the obligations Hynix had for buffer inventory; (iii) Hynix only had the capacity to supply 60 million 2133 DRAM chips in 2013, and thus anything stored as buffer inventory would have been part of that 60 million capacity rather than excess inventory; (iv) if Hynix had taken away product deliverable prior to the fire and stored as buffer inventory, it would not have benefitted Microsoft because it

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL BRIEF
(2:17-CV-00467-RAJ)
Page 7

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

1      would have unnecessarily delayed shipping product that Hynix had in stock and

2      which Microsoft urgently needed; (v) a disaster recovery plan would not have

3      covered a fire as catastrophic as the Wuxi fire; and (vi) after the fire, Hynix

4      implemented a disaster recovery plan that mitigated any damages to Microsoft,

5      which included sourcing inventory from other customers, providing a dedicated

6      account manager to oversee recovery and Microsoft's orders, restoring the affected

7      areas at the Wuxi facility, and reconfiguring the Wuxi facility to utilize undamaged

8      equipment and uncontaminated areas.

9 **III.**      **SUMMARY OF HYNIX'S AFFIRMATIVE DEFENSES**

10      At trial, Hynix also intends to offer evidence supporting various affirmative defenses

11 detailed in the parties' proposed pre-trial order. In addition, Hynix offers the following detail on

12 certain of its affirmative defenses.

13      **A.**      **The Commercial Impracticability Defense.**

14          **1.**      **The elements of the commercial impracticability defense.**

15      Under the doctrine of commercial impracticability, codified in the Uniform Commercial

16 Code and in Washington's Revised Code, a seller is excused from its full performance on a sales

17 contract if performance has been made impracticable by "the occurrence of a contingency the non-

18 occurrence of which was a basic assumption on which the contract was made." RCWA § 62A.2-

19 615(a). In situations where an uncontemplated, supervening event affects only part of a seller's

20 capacity to perform, as here, the seller may allocate its production and deliveries among its

21 customers "in any manner which is fair and reasonable." RCWA § 62A.2-615(b). Accordingly,

22 in order to prove its affirmative defense of commercial impracticability, Hynix need only show (1)

23 the occurrence of a contingency that rendered performance commercially impracticable, (2) the

24 non-occurrence of that contingency was a basic assumption on which the contract was made, and

25 (3) Hynix allocated its available  2133 DRAM chips in a fair and reasonable manner

26 notwithstanding the effects of the contingency rendering performance commercially impracticable

27 (i.e., the fire). RCWA § 62A.2-615(a)-(b).

28      ///

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL BRIEF
(2:17-CV-00467-RAJ)
Page 8

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

2.    **The evidence supporting commercial impracticability.**

At trial, Hynix intends to offer evidence in the form of documents and testimony showing that it would have been commercially impracticable for Hynix to have fully performed under the 2004 CPA and the Ninth Amendment as a result of the Wuxi fire.[2]  Such evidence includes:

- Evidence establishing that the non-occurrence of the Wuxi fire was a basic assumption of the Ninth Amendment and the CPA between Microsoft and Hynix, *i.e.*, that the Wuxi fire was not a risk that Hynix assumed under the contract.
- Evidence establishing that the parties did not allocate the risk of a fire occurring.
- Evidence establishing that the Wuxi fire prevented full performance under the contract due to its effect on supply of 2133 DRAM chips.
- Evidence establishing that Hynix provided to Microsoft more than 99 percent of its available 2133 DRAM chips produced in 2013, and that such allocation was fair and reasonable.

B.    **The Voluntary Payment Defense.**

1.    **The elements of the voluntary payment defense.**

An insurer who acts as a volunteer in making payment on behalf of its insured cannot hold third parties liable for that voluntary payment.  *Hartford Ins. Co. v. Ohio Cas. Ins. Co.*, 145 Wash. App. 765, 773 (2008) (citing *Clow v. Nat'l Indemnity Co.*, 54 Wash. 2d 198, 207-08 (1959)).  "One is a volunteer and not entitled to subrogation if, in making payment, he has no right or interest of his own to protect and acts without obligation, moral or legal . . . ."  *Id.* at 774.  Importantly, under Washington law, "Whether one acts as a volunteer is determined in light of all surrounding circumstances."  *Id.*  Microsoft's insurance payment was substantially the product of Microsoft's misrepresentation to its insurers, and thus, was a "voluntary" payment for which Hynix cannot be liable.  *See id.*

---

[2]    Hynix maintains that it acted commercially reasonable under the Ninth Amendment, and thus did not breach the contract for that reason alone.  However, Hynix will also offer evidence showing that it would have been commercially impracticable for Hynix to have provided 60 million 2133 DRAM chips to Microsoft as a result of the Wuxi fire, let alone 85 million or more chips.

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL BRIEF
(2:17-CV-00467-RAJ)
Page 9

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

2.      **The evidence supporting voluntary payment defense.**

At trial, Hynix intends to offer evidence in the form of documents and testimony indicating that the insurance payment made by Cypress to Microsoft was voluntary, and thus Hynix cannot be held liable for the debt Cypress paid to its insured, Microsoft:

- Evidence that Microsoft misstated critical facts to its insurers, which the insurers did not bother to verify, such as failure to verify (i) whether Hynix could have provided more than 96 million 2133 DRAM chips in 2013 if not for the Wuxi fire, (ii) whether Hynix was in fact the sole supplier of 2133 DRAM chips to Microsoft prior to the fire, (iii) whether Hynix's capacity was already constrained due to market conditions before the fire, and (iv) which damages arose from the fire.

- Evidence that the claims-handling process for Microsoft's claim deviated from industry custom and practice in a number of ways, including a lack of adequate documentation and independent verification.

- Evidence that Cypress is a captive insurance company essentially comprised of members of Microsoft's risk department, and that the majority of Cypress's Board of Directors are Microsoft employees, all indicating that the claims-handling process was not an arms-length transaction.

- Evidence that Microsoft has paid significant premiums to Cypress and the reinsurers under the subject policy, indicating that Cypress and the reinsurers' decision to pay out to Cypress was not motivated by conventional risk underwriting standards but by separate and strategic business considerations.

- Evidence that the amount of loss paid out by Cypress and the reinsurers— $150,000,000—included substantial sums that were not covered by the Microsoft Policy because those losses were not directly related to the Wuxi fire.

## IV.    DAMAGES

### A.    Cypress May Not Pursue Incidental And Consequential Damages.

This Court granted Hynix's motion for partial summary judgment barring indirect and consequential damages due to the limitation of liability provision in the Ninth Amendment.  (Dkt.

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL BRIEF
(2:17-CV-00467-RAJ)
Page 10

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

No. 195 at 17-18.)  Cypress's damages, thus, are at most limited to *direct* damages for breach of the Ninth Amendment.  Under the UCC, direct damages include *only* "cover" costs of replacement goods, which are defined as the difference between the market cost of cover goods and the contract price of the goods at the time of breach.  RCWA § 62A.2-712(b), -713(1).  An aggrieved seller is otherwise entitled to these direct "cover" damages "*together* with any incidental and consequential damages," RCWA § 62A.2-713(1) (emphasis added), meaning that damages other than "cover" costs are necessarily indirect damages.  In fact, the incremental freight costs, storage, and idle labor expenses at issue here are subsumed in the UCC's definition of "incidental damages" and "consequential damages":

> (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable ***charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay*** or other breach.

> (2) Consequential damages resulting from the seller's breach include

> (a) ***any loss resulting from general or particular requirements and needs*** of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise.

RCWA §62A.2-715 (emphasis added).  Hence, Microsoft's claimed airfreight, storage, and idle labor costs are at best incidental or consequential damages that did not flow directly from any alleged breaches of the Ninth Amendment, but instead, were occasioned by Microsoft's particularized requirements and needs.  At bottom, since these types of damages were expressly disclaimed by the Ninth Amendment, they are excluded by the Court's order barring any indirect, consequential, punitive, special, or exemplary damages.  (Dkt. No. 195 at 18.)

**B.     Cypress's "Cover" Damages Are Limited To Chips Actually Due From Hynix In 2013 But Were Not Delivered.**

Cypress's damages are further limited to "cover" 2133 DRAM chips purchased by Microsoft in 2013 for chips *due from Hynix* in 2013.  RCWA § 62A.2-712.  Cypress cannot recover as "cover" damages *additional* costs—including 2014 DRAM chip purchases—that Microsoft allegedly incurred in 2014 because these costs are not "cover" under RCWA § 62A.2-712.  Under RCWA § 62A.2-712's definition of "cover": "After a breach within the preceding

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL BRIEF
(2:17-CV-00467-RAJ)
Page 11

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

1   section, the buyer may 'cover' by making in good faith and without unreasonable delay any

2   reasonable purchase of or contract *to purchase goods in substitution for those due from the seller*."

3   As the statute itself makes clear, there can be no "cover" for substitution goods that were *not due*

4   *from the seller*, i.e., for which there was no contract to deliver.

5         This is critically important to defining the actual cover damages that Cypress may recover

6   here.  As Cypress's own expert explained, there was no contract price set for 2133 DRAM chips

7   between Microsoft and Hynix in 2014.  (Trial Ex. 243 (Bradshaw Report) at 4 ("[S]ince the

8   contractual price for supplying chips in 2014 had not been determined at the time of the fire, my

9   measurement of damages assumes that the actual chip price from SK Hynix for the period October

10  through December of 2013 would have continued into January 2014.").)  This is because the Ninth

11  Amendment only contained capacity requirements and pricing for the second, third, and fourth

12  quarters of 2013.  (Trial Ex. 2 (Ninth Amendment) at 4.)  Because there was no contract between

13  Microsoft and Hynix for the supply of 2133 DRAM chips in 2014, Hynix *had no contractual*

14  *obligation* to supply 2133 DRAM chips in 2014.  In other words, under RCWA 62A.2-712, there

15  were no chips "due from the seller" in 2014, and thus Hynix cannot possibly be held liable for

16  additional chips bought by Microsoft that exceeded Hynix's obligations.[3]  Accordingly, Cypress

17  cannot now attempt to couch 2133 DRAM chips Microsoft purchased from other suppliers in 2014

18  as "cover" damages because these are not proper cover goods purchases.

19        As the evidence will show, Hynix agreed to use commercially reasonable efforts to supply,

20  at most, 60 million 2133 DRAM chips in 2013.  Hynix supplied approximately 50.6 million chips

21  in 2013 as a result of its capacity constraint and the Wuxi fire.  Thus, even if it is found that Hynix

22  did not use commercially reasonable efforts to meet the remaining capacity commitment

23  obligations (which it did), Hynix's obligations due to Microsoft were for, at most, approximately

24  9.4 million additional chips in 2013, for which Microsoft purchased at a higher price.  (*See* Trial

25

26

27  [3]   To the extent Cypress argues that Microsoft was forced to enter into a long-term supplier agreement with
Samsung that extended into 2014 as a result of Hynix's inability to supply all requested chips, such damages are still

28  not "cover" under § 62A.2-712 for this same reason.  These additional chip purchases are, instead, consequential or
incidental damages that this Court has already determined are excluded from any potential recovery.

1     Ex. 243 (Bradshaw Report) at 8.)  *That* is the proper alleged "cover" under RCWA § 62A.2-712—

2     not any *further* chip purchases made by Microsoft beyond Hynix's commitments—and Cypress

3     cannot pursue damages beyond this figure under RCWA § 62A.2-712.

4         In sum, any evidence of damages incurred by Microsoft as a result of 2014 incremental

5     2133 DRAM chip costs are irrelevant to the damages Cypress may actually recover.  Those

6     damages are not "cover" under Washington law, and under this Court's order, any non-direct (i.e.,

7     non-cover) damages are barred.

8
9
### C. As Microsoft's Subrogee, Cypress May Only Recover Damages That Are Covered By The Microsoft Policy And Paid By Cypress.

10        Lastly, as Microsoft's subrogee, Cypress may only recover damages that were properly

11   paid out pursuant to the Microsoft Policy.  *See Trinity Universal Ins. Co. of Kansas v. Ohio Cas.*

12   *Ins. Co.*, 176 Wash. App. 185, 203 (2013) (plaintiff insurance company, pursuing action as

13   subrogee, could not pursue statutory claims against defendant because insured "had no losses to

14   recover" under those claims)  Accordingly, Cypress must first show that the losses paid out were

15   "directly resulting from physical loss or damage of the type insured by" the Microsoft Policy.

16   (Trial Ex. 107 (Policy 1005) at 35.)  As discussed above, Microsoft was not insured against a

17   breach of contract, and thus its losses occurring from any breach of contract are not covered under

18   the policy because they are not directly resulting from a *physical loss*.

19        Second, to the extent Cypress can show that it properly paid out covered losses, Cypress

20   may only recover those losses that it can directly tie to the fire (*i.e.*, the insured risk).  This is

21   because, as a subrogee, Cypress can only recover those damages Microsoft suffered that were

22   covered by the policy in question.  *See Trinity Universal*, 176 Wash. App. at 203.  For example,

23   Cypress has identified alleged breaches of the buffer inventory and disaster recovery provisions.

24   Those breaches, first of all, were not *caused by* the fire.  But even if they were somehow caused by

25   the fire, Cypress must then connect the damage Microsoft suffered from those breaches to the

26   amount paid by Cypress to compensate Microsoft for those damages under the policy.  However,

27   there were no actual damages suffered by Microsoft as a result of those breaches.  Thus, Cypress

28   cannot now recover damages for those breaches since none of the insurance payments made by

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL BRIEF
(2:17-CV-00467-RAJ)
Page 13

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

1   Cypress could have compensated Microsoft.

2   **V.      EVIDENTIARY ISSUES**

3         The parties have submitted various *Daubert* motions and motions *in limine*, which the

4   Court has already ruled on.  (*See* Dkt. Nos. 198, 199.)  The Court has also ordered additional

5   briefing on certain motions *in limine* that the Court has taken under advisement, which were

6   submitted to the Court on February 20.  (Dkt. Nos. 206, 207.)  Additionally, the parties have

7   submitted limiting instructions and objections pursuant to the Court's order on certain evidentiary

8   issues.  (Dkt. Nos. 206, 208.)  Those issues remain pending before the Court.

9         The parties have also exchanged deposition designations, counter-designations, and

10   objections to the use of certain deposition testimony, which Hynix expects to be resolved at trial.

11   In addition to these evidentiary issues that have already been submitted to the Court, Hynix

12   submits several additional evidentiary issues that will require guidance from the Court.

13   **A.      Evidence Relating To The Buffer Inventory Provision And Disaster Recovery
           Plan Provision.**

14

15         In the Court's order on the parties' competing motions for summary judgment, the Court

16   determined that Cypress was entitled to summary judgment on breach of Paragraphs 4.2, 7, and

17   12.1 of the CPA based on Hynix's failure to establish and maintain sufficient buffer inventory or

18   maintain a written disaster recovery plan.  (Dkt. No. 195 at 15-16.)  While the Court found *breach*,

19   nothing in the Court's order suggests that Cypress has established the essential elements of

20   causation and damages to sustain its breach of contract action on these two claims.  *See BP W.*

21   *Coast Prods. LLC v. SKR Inc.*, 989 F. Supp. 2d 1109, 1121 (W.D. Wash. 2013) ("A breach of

22   contract claim depends o[n] proof of four elements: duty, breach, causation, and damages." (citing

23   *Baldwin v. Silver*, 165 Wash. App. 463 (2011))).  Moreover, Cypress only moved for partial

24   summary judgment on the element of breach, and did not present or establish any evidence of

25   causation or damages.  (*See* Dkt. 154 at 3-4.)  Accordingly, Hynix intends to offer at trial evidence

26   establishing that any breach of these provisions could not have caused any damages to Microsoft.

27         *First*, concerning the buffer inventory provision, breach of this provision could not have

28   caused any damages to Microsoft because, among other things, (i) the capacity agreed to under the

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL
BRIEF
(2:17-CV-00467-RAJ)
Page 14

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

1   Ninth Amendment (60 million chips) *included* buffer inventory under the parties' "First In – First

2   Out" manufacturing agreement in Section 7 of the CPA; (ii) the failure to have a buffer inventory

3   *was not caused by the fire*; and (iii) even if the fire was somehow related to the failure to have a

4   buffer inventory, there were no damages that occurred to Microsoft as a result of that breach

5   because Hynix could not have supplied anymore 2133 DRAM chips to Microsoft than it did.

6   Thus, because the breach (1) was neither proximately caused by the covered loss—property

7   damage resulting from the fire—nor (2) resulted in any damage to Microsoft, Cypress cannot

8   satisfy the required elements for breach of contract on this contract provision.

9       *Second*, with respect to the disaster recovery plan, Hynix will introduce evidence at trial

10  establishing that this breach did not cause any damages to Microsoft for at least the following

11  reasons: (i) Hynix implemented a disaster recovery plan after the fire that mitigated any losses to

12  Microsoft; (ii) a written disaster recovery plan would not have covered a fire as devastating as the

13  Wuxi fire; (iii) Hynix's efforts post-fire—including, among other things, immediate post-fire

14  restoration of the Wuxi facility, assembling a revised target plan for Microsoft and other

15  customers, collaborating extensively with Microsoft to meet their supply requirements, and

16  sourcing chips from other customers to allocate to Microsoft—were consistent with industry

17  custom and practice for dealing with a disaster of this magnitude; and (iv) a written disaster

18  recovery plan would not have enabled Hynix to have produced any more 2133 DRAM chips than

19  it was able to produce absent a written disaster recovery plan.  Thus, for these reasons and others

20  that Hynix will present at trial, any breach of this provision could not have caused Microsoft's

21  losses.

22      **B.     Evidence Of Undisclosed Intent, Subjective Interpretations Of Contract
               Terms, Or Non-Percipient Witness Interpretation Of The Contracts At Issue
23             Should Be Excluded.**

24      Generalized testimony about what specific terms mean under the CPA or Ninth

25  Amendment, absent a showing that the testifying witness actually discussed or negotiated the term

26  with Hynix, should be barred.  This testimony lacks foundation and personal knowledge under

27  Federal Rules of Evidence 602 and 901.  For instance, Cypress previously designated deposition

28  testimony from Brian Tobey, a Microsoft witness, concerning the interpretation of certain

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL BRIEF
(2:17-CV-00467-RAJ)
Page 15

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

1    provisions in the Ninth Amendment and what Mr. Tobey believed Hynix's obligations were under

2    the contracts.  (*See, e.g.*, Tobey Dep. Tr. 16:1-17:8; 17:19-19:7; 28:2-29:13; 31:11-32:7; 62:3-17.)

3    However, Mr. Tobey testified that he was *not even involved* in negotiating the CPA or Ninth

4    Amendment with Hynix and had not even seen these documents until the day before his

5    deposition.  (Tobey Dep. Tr. 30:15-20; 72:20-22.)  Mr. Tobey's testimony lacks personal

6    knowledge because he was not involved in the negotiation of the agreements, and thus he should

7    be excluded from offering any testimony as to the meaning of specific terms under the parties'

8    agreements.  *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is

9    introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

10        Moreover, *even if* a witness has percipient knowledge, that witness may not testify as to

11   their own subjective or undisclosed interpretation of the contract terms at issue.  Under

12   Washington's "objective manifestation theory" of contract interpretation, "extrinsic evidence of a

13   party's subjective, unilateral, or undisclosed intent regarding the meaning of a contract's terms is

14   inadmissible."  *RSD AAP, LLC v. Alyeska Ocean, Inc.*, 190 Wash. App. 305, 315 (2015).  Cypress

15   may attempt to introduce evidence at trial concerning what certain Microsoft witnesses understood

16   key contract terms to mean under the Ninth Amendment.  To the extent those witnesses attempt to

17   testify as to their own subjective or unilateral understanding of what those terms mean, that

18   evidence is inadmissible.  *Id.*; *see also Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*,

19   123 Wash. 2d 678, 684 (1994) (en banc) ("Unilateral or subjective purposes and intentions about

20   meanings of what is written do not constitute evidence of the parties' intentions.").

21        As one example, Terry King, a Microsoft witness, testified at his deposition that he could

22   not recall any specific discussions with Hynix concerning the definition of capacity constraint or

23   other key terms at the time of the Ninth Amendment.  (King Dep. Tr. 69:16-21.)  Accordingly, Mr.

24   King—who has been identified by Cypress as a witness it intends to call at trial—should be barred

25   from testifying at trial as to his subjective interpretation or undisclosed intent of these or any other

26   terms of the Ninth Amendment.  To the extent Cypress intends to offer testimony from other

27   witnesses who similarly hold their own interpretations or subjective intentions of key contract

28   terms, that testimony should be excluded.

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL BRIEF
(2:17-CV-00467-RAJ)
Page 16

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

1    Lastly, testimony interpreting the contracts at issue by Cypress's DRAM expert, Mr.

2    Malcom Penn, should also be excluded, as such interpretation usurps the role of the trier of fact or

3    the Court by offering legal conclusions.  *See, e.g.*, *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,

4    523 F.3d 1051, 1059-60 (9th Cir. 2008) (affirming exclusion of expert testimony on the basis that

5    it impermissibly offered legal conclusions).  Under Federal Rule of Evidence 702, "[t]estimony as

6    to ultimate issues is not permitted when it consists of legal conclusions or opinions."  *Hernandez*

7    *v. City of Vancouver*, No. C04-5539 FDB, 2009 WL 279038, at *5 (W.D. Wash. Feb. 5, 2009); *see*

8    *also Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992)

9    (matters of law are "inappropriate subjects for expert testimony"); *Traumann v. Southland Corp.*,

10   858 F. Supp. 979, 985 (N.D. Cal. 1994) (expert testimony is "not permitted when it consists of

11   legal conclusions or opinions").

12    The Court has already severely limited Mr. Penn's testimony, finding that he may only

13   offer testimony related to his opinions number 6[4] and 8 set forth in his expert report.  (*See* Dkt.

14   No. 198 at 6.)  As the Court noted, "most of [Mr. Penn's eight opinions] impermissibly touch on

15   issues of law."  (*Id.*)  To the extent Mr. Penn attempts to offer testimony interpreting the meaning

16   of contract terms at issue in this case, Hynix reiterates its objections to this testimony.  *Aguilar*,

17   966 F.2d at 447 ("[E]xpert testimony consisting of legal conclusions regarding existence of

18   contract *or meaning of its terms* [is] not admissible." (emphasis added)).  Mr. Penn is not a

19   percipient witness; he is an expert attempting to provide his own interpretation of the contracts'

20   terms and to impose certain duties on Hynix.  All Mr. Penn has done is read the terms of the CPA

21   and the Ninth Amendment, determined that certain duties existed under those agreements, and

22   concluded based on the factual evidence that Hynix breached those duties.  But that is the role of

23   the jury, not an expert.  In the event that Mr. Penn attempts to offer these impermissible opinions

24   at trial, Mr. Penn should be precluded from doing so and his testimony should be stricken.

---

26   [4]   Hynix believes the Court inadvertently identified opinion 6 instead of opinion 5 in its order.
27   Mr. Penn's opinion 6 concerns DRAM allocation while his opinion 5 concerns DRAM yield
     calculations and use of incorrect yield data.  (*See* Dkt. No. 198 at 6 ("Despite Hynix's criticism of
     Penn's analysis, the Court will permit Penn to testify on DRAM yields and industry practice . . .
28   [and] Hynix is free to cross-examine Penn on . . . his reliance on purportedly incorrect data.").)

**C.**     **Evidence of Microsoft's Failure to Take Reasonable Precautions Is An Admission and Highly Relevant to Hynix's Defenses.**

Washington courts apply the rule of *Hadley v. Baxendale*, 9 Ex. 341, 354, 156 Eng. Rep. 145, 151 (1854), holding that "damages recoverable for a breach of contract are those which 'may fairly and reasonably be considered either arising naturally, *i.e.*, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.'" *Gaglidari v. Denny's Rests., Inc.*, 117 Wash. 2d 425, 445-446 (1991) (quoting *Hadley*). This requirement of foreseeability limits damages to those objectively viewed at the time of contracting as the "probable" result of breach. *See* REST. (2D) CONTRACTS, § 351(1) ("Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made"). This foreseeability requirement for contract damages is "a more severe limitation of liability than is the requirement of substantial or 'proximate' cause in the case of an action in tort or for breach of warranty." *Id.*, comment a.

Applying the objective foreseeability standard here, a party in Hynix's position would have no reason to presume that Microsoft would fail to take reasonable, industry-accepted precautions against the risk that a major source of supply might be impaired. At the very least, Hynix would have objectively expected—under standard industry custom and practices—that Microsoft would have obtained a second source supplier for 2133 DRAM chips since Hynix did not contract to be a sole source supplier for Microsoft's 2133 DRAM chip needs in 2013. (Trial Ex. 2 (Ninth Amendment) at 4.) Damages resulting from Microsoft's failure to take such reasonable and expected precautions are therefore not recoverable. Consequently, evidence that Microsoft failed to take commercially reasonable precautions is highly relevant to the scope of recoverable damages for breach of contract.

**D.**     **Damages After January 1, 2014 Are Inadmissible**.

The Court previously considered Hynix's motion *in limine* to bar evidence of Microsoft's damages incurred after January 1, 2014, on the grounds that the Ninth Amendment only pertains to chip quantities through 2013, and the parties were actively negotiating a new amendment

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL BRIEF
(2:17-CV-00467-RAJ)
Page 18

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

1    beginning in January 2014.  (Dkt. No. 184 at 3-4.)  Under the Ninth Amendment, Hynix and

2    Microsoft agreed to a specific capacity table setting forth Microsoft's supply requirements for the

3    second, third, and fourth quarters of 2013.  (Trial Ex. 2 (Ninth Amendment) Table 3.)  The parties

4    did not agree to any capacity requirements for 2014, and importantly, the Ninth Amendment

5    unequivocally states: "Any capacity for which Microsoft does not supply a purchase order in the

6    applicable quarter shall not carry forward to the next quarter, without written agreement by

7    [Hynix]."  (Trial Ex. 2 (Ninth Amendment) § 2.)  Thus, any unpurchased 2133 DRAM chips from

8    quarter to quarter would not roll over.  The parties also had not agreed to 2133 DRAM chip

9    pricing for 2014.

10          In the Court's order on the parties' motions *in limine*, the Court noted the relevance of this

11   evidence to Hynix's voluntary payor defense, and ordered that Cypress submit a limiting

12   instruction before introducing any evidence related to its damages incurred in 2014.  Cypress

13   submitted its limiting instruction on February 20, 2019, and Hynix submitted its objections to the

14   proposed limiting instruction on February 22, 2019.  (Dkt. Nos. 206, 208.)  As detailed in Hynix's

15   motion *in limine* number 2 and in its objections to Cypress's proposed limiting instruction, this

16   evidence is irrelevant because any damages after January 1, 2014 are not tied to the Ninth

17   Amendment pursuant to the parties' agreement.  (Dkt. No. 184 at 6; Dkt. No. 208 at 2-3; Trial Ex.

18   2 (Ninth Amendment) at 4.)  This is for a very simple reason: there was no breach of contract

19   based on any purchase orders for 2133 DRAM chips that were to be delivered in 2014.  The

20   capacity requirement table in the Ninth Amendment concerned 2133 DRAM chip requirements

21   from the second quarter to the fourth quarter in 2013, with chip requirements not rolling over from

22   quarter to quarter.  (Trial Ex. 2 (Ninth Amendment) at 4.)  To the extent Hynix was unable to

23   provide all of the chips required by Microsoft in 2013 due to the Wuxi fire, Microsoft had to

24   purchase cover goods based on Hynix's undersupply.  But in 2014, there was no agreement

25   between Hynix and Microsoft for Hynix to supply 2133 DRAM chips to Microsoft at a certain

26   quantity or at a certain price.  Thus, as detailed earlier in Section IV.B., evidence of the costs

27   Microsoft paid for chips *in 2014* is irrelevant to the *cover* damages Microsoft incurred in 2013

28   pursuant to Hynix's commitments under the Ninth Amendment.

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL BRIEF
(2:17-CV-00467-RAJ)
Page 19

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

1    Thus, while Cypress may have considered these damages in its claim assessment, such

2    consideration does not mean that it was proper for Cypress to do so because those damages are

3    unrelated to any breach of the Ninth Amendment.

4    To the extent this Court allows Cypress to introduce evidence of damages incurred in

5    2014, Hynix maintains that such evidence is irrelevant to Cypress's breach of contract claim and,

6    at the very least, the jury must be reminded that all incidental damages—including the cost of

7    2133 DRAM chips purchased by Microsoft in 2014—must not be considered in any damages

8    award.

9    **E.      Evidence Of Damages Must Be Directly Tied To The Fire.**

10    It is alleged that Microsoft's losses resulted directly from the September 4, 2013 fire at the

11    Hynix Wuxi facility.  (Trial Ex. 22 (VeriClaim Report One) at 2 ("The loss involves *fire damage*

12    to a parts supplier *resulting in a contingent time element loss*." (emphasis added)).)  That is, the

13    insurers determined that the cause of Microsoft's loss was *the fire*, not any breach of contract by

14    Hynix.  Thus, any damages that Cypress claims at trial must therefore be tied to, and arise only

15    from, the fire.  *See Meas v. State Farm Fire & Cas. Co.*, 130 Wash. App. 527, 539 (2005) ("The

16    meaning is plain that for property damage where there is classic subrogation, the insured is to be

17    made whole *for the same loss,* i.e., the property damage . . . ." (emphasis added)); *Touchet Valley*

18    *Grain Growers, Inc. v. Opp & Seibold Gen. Constr. Inc.*, 119 Wash. 2d 334, 341 (1992)

19    ("[S]ubrogation allows an insurer to recover what it pays to an insured under a policy by using the

20    wrongdoer.  The insured steps 'into the shoes' of its insured.  The insurer, the 'subrogee', has

21    rights equal to, but not greater than, those of the injured party.").

22    Now, Cypress is trying to shift the goal posts to claim that the cause of Microsoft's loss

23    was actually Hynix's breach of contract.  But as described earlier, the Microsoft Policy did not

24    cover a breach of contract, and the insurers determined the loss arose from the fire.

25    For instance, though the Court held that the element of breach of the buffer inventory

26    provision was established by Cypress in its February 6 Order, there are no damages arising out of

27    that breach that Cypress can claim as part of its contingent time element loss (*i.e.*, resulting from

28    the fire).  The existence of a buffer inventory would have had no impact on Hynix's ability to

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL BRIEF
(2:17-CV-00467-RAJ)
Page 20

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

1   supply chips to Microsoft, before or after the Wuxi fire.  Cypress cannot reconcile how Hynix's

2   alleged failure to maintain the requisite inventory *before* the fire was in any way *caused* by the

3   fire.  Similarly, Cypress cannot show it suffered any damages as a result of Hynix's alleged failure

4   to maintain a disaster recovery plan.  The written plan was required to occur within 120 days of

5   the 2004 CPA's execution, some nine years *before* the Wuxi fire.

6          In other words, Cypress, as a subrogor, can only seek damages arising entirely from

7   Microsoft's contingent time element loss that explicitly—and solely—arises out of the Wuxi fire.

8   As a result, Cypress is limited to, and must causally connect any damages it wishes to claim to, the

9   Wuxi fire.

10  **VI.    ISSUES OF LAW AND VERDICT FORMS**

11         In the parties' proposed pre-trial order, the parties have identified a number of questions

12  which they believe are issues of law for this Court to decide.  (Dkt. No. 202.)  For instance, in

13  light of the Court's summary judgment ruling, in considering whether Hynix breached its

14  contractual obligations, the Court appeared to leave to the jury to decide various contractual

15  interpretation issues, including the meaning of important contractual terms.

16         Under Washington law, "interpretation of a contract provision is a question of law only

17  when (1) the interpretation does not depend on the use of extrinsic evidence or (2) only one

18  reasonable inference can be drawn from the extrinsic evidence."  *SAS Am., Inc. v. Inada*, 71 Wash.

19  App. 261, 266 (1993); *see also Brotherson v. Prof'l Basketball Club, LLC*, 604 F. Supp. 2d 1276,

20  1286 (W.D. Wash. 2009) (where interpretation "depend[s] on the use of extrinsic evidence," or the

21  extrinsic evidence admits more than one "reasonable inference," the court cannot interpret the

22  contract as a purely legal matter).  Given the Court's finding that certain terms in the CPA and the

23  Ninth Amendment are ambiguous and require reference to extrinsic evidence, it appears that the

24  Court intends to leave various contractual interpretation issues to the jury to decide.  (*See* Dkt. No.

25  195 at 6-7, 12, 13.)

26         In light of the Court's rulings, Hynix seeks clarity on the Court's preference for the verdict

27  form to be provided to the jury.  Specifically, Hynix seeks clarity on whether the Court is inclined

28  to use (1) a general verdict form only, (2) a special verdict form only, or (3) a mixed verdict form

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL
BRIEF
(2:17-CV-00467-RAJ)
Page 21

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

1   combining elements of a general and special verdict form.  Moreover, Hynix seeks guidance from

2   the Court on whether the Court will request that the jury determine certain factual issues, and then

3   based on the jury's findings on those questions, the Court will determine the legal consequences of

4   those factual determinations as a matter of law.

5         In light of these questions, Hynix respectfully requests an opportunity to address these

6   concerns with the Court at the pre-trial conference or at any other time at the Court's convenience.

7   DATED this 25th day of February, 2019

8

9                         /s/ Alex Baehr

10                      Alex Baehr (WSBA #25320)
                       SUMMIT LAW GROUP

11                      315 5th Ave. S Suite 1000
                       Seattle, Washington 98104

12                      Phone (206) 676-7039
                       Local Counsel for SK Hynix America, Inc.

13

14

15                         /s/ Ekwan E. Rhow

16                      Ekwan E. Rhow (*pro hac vice*)
                       Timothy B. Yoo (*pro hac vice*)

17                      Jen C. Won (*pro hac vice*)
                       Tristan Favro (*pro hac vice*)

18                      BIRD, MARELLA, BOXER, WOLPERT,
                     NESSIM, DROOKS, LINCENBERG & RHOW,

19                      P.C.
                     1875 Century Park East, 23rd Floor

20                      Los Angeles, California 90067-2561

21                      Phone (310) 201-2100
                       Fax (310) 201-2110

22                      *Counsel for SK Hynix America, Inc.*

23

24

25

26

27

28

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL BRIEF
(2:17-CV-00467-RAJ)
Page 22

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on February 25, 2019, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

4

participants in this case who are registered CM/ECF users.  I further certify that all participants to

5

this case are registered with the CM/ECF system, and therefore no participant need be served by

6

conventional methods.

7

8

/s/ Jen C. Won

9

BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS, LINCENBERG &
RHOW, P.C

10

1875 Century Park East, 23rd Floor

11

Los Angeles, California 90067-2561

12

Phone (310) 201-2100
Fax (310) 201-2110

13

*Counsel for SK Hynix America, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT SK HYNIX AMERICA, INC.'S TRIAL
BRIEF
(2:17-CV-00467-RAJ)
Page 23

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Fl., Los Angeles, CA 90067, Tel: (310) 201-2100